Burnes, J.
INTRODUCTION
Plaintiff Town of Wellfleet (“Town”}, by and through its Inspector of Buildings and Zoning Enforcement Officer, brings this action under G.L.c. 40A, §7, the Zoning By-laws of the Town of Wellfleet (“By-laws”), and the State Building Code 780 C.M.R. 122.1 (“Code”), seeking to enforce several orders against Defendant Charles F. Amsler, trustee of the B.C. Trust (“Amsler”), concerning sand removal activities on his property. These orders include a permanent injunction from engaging in excavation, construction, earth removal or other disturbance of the surface of the property without first applying for and obtaining a building permit, and restoration of the property to its pre-excavation condition.
Pursuant to Mass.R.Civ.P. 56, the Town now moves for summary judgment on the grounds that it is entitled to enforce these orders and that Amsler is precluded from challenging the orders because he failed to appeal them to the Town of Wellfleet Zoning Board of Appeals (“Board”) and the State Building Code Appeals Board within the requisite time.[3] Amsler has also filed a cross motion for summary judgment, arguing that the building inspector does not have jurisdiction under the By-laws and the Code to make these orders other than the “cease and desist” order. After hearing, for the reasons discussed below, the Town’s motion is ALLOWED and Amsler’s motion is DENIED.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving party, as revealed by the summary judgment record, are as follows.
Amsler holds title to real estate known and numbered as 2520 and 2534 State Highway, located in Wellfleet, Massachusetts (the “Properly”), which contains two buildings (a single-family residence and a real estate office). The Property is shown as Parcel 34 on Assessor’s Map 23, located in the Commercial District.
In accordance with the By-laws, §5.3.3, “Quarry, Sandpit, etc.,” a landowner may not operate a quarry or sandpit in the Commercial Zoning District. Section 2.1 defines “Quarry, Sand Pit, Gravel Pit, Top Soil Stripping” to mean “(a) lot of land or part thereof used for the purposes of extracting stone, sand, gravel or top soil for sale or for use at a site removed from said lot, exclusive of the process of grading a lot preparatory to the construction of a building for which application for a building permit has been made and said permit issued.”
Prior to removing any sand from the Properly, Amsler contacted the building inspector at the time, Victor Stanley (“Stanley”), and requested a determination whether he could remove sand from the Property without violating the By-laws. On April 19, 1999, Stanley sent Amsler a letter stating that the removal of sand would not constitute a “quarry/sandpit” in violation of Section 5.3.3 of the By-laws. Amsler began removing sand and giving it to local contractors.
In or about 2000, Stanley ceased being the building inspector in Wellfleet and Richard A. Asmann (“Asmann”) was appointed by the Board of Selectmen to that position. On or about June 28, 2001, Asmann determined that the removal of sand from Amsler’s Property constituted a “quarry/sandpit.” He sent a written “Stop Work Notice” letter to Amsler (the “June 2001 Order”), requiring him to; (1) cease and desist all excavation and site work on the Properly until proper permits and approvals had been received; (2) produce a plan, within 72 hours, to provide for the stabilization of the embankment created by the excavation, and provide for the guardrail required by the Code; and (3) provide a record of the quantities of sand and soil that had been removed from the Property. Amsler ceased removing sand after the receipt of the June 2001 Order and did not appeal the order.[4]
On August 14, 2001, Asmann sent a written “Zoning Violation Correction Notice” to Amsler (the “August 2001 Order”). In the order, he stated that Amsler continued to be in violation of the Code and Section 5.3.3 of the By-laws, and ordered that an adequate temporary safely barrier/guardrail be installed at the top of the embankment within 48 hours, and that work begin on the temporary stabilization of the embankment within 72 hours. The August 2001 Order also required Ansler to provide a timetable to either construct a permanent retaining wall or return the site to its pre-excavation condition within seven days of his receipt of the order. Amsler did not appeal, claiming that it was not necessary as he was in compliance with the “cease and desist” order issued on June 28, 2001 and that Asmann did not have the legal authority either under the By-laws or the Code to issue any orders other than the “cease and desist” order.
On April 24, 2002, Asmann, for the third time, ordered Amsler to submit a proposal for full restoration of the Property to its pre-excavation condition, with a deadline of June 5, 2002 (the “April 2002 Order”), and ordered Amsler to install a permanent guardrail within fourteen days to replace the inadequate temporary fence at the top of the excavation. Amsler neither complied with the April 2002 Order nor appealed to the Board. He contends that he had fully *631 complied with all previous orders to the extent that he was legally obligated to do so. As of October 11, 2002, Amsler had not filed a proposal for restoration of the Property, and had not installed a permanent guardrail.
Amsler has, however, caused additional fill to be brought onto the lot and placed at the bottom of the slope to maintain a proper angle of repose. He also planted vegetation on the hillside to further ensure the stability of the slope, and installed a snow fence along the top of the slope to mark the property line and provide a barrier to anyone who might seek to enter the Property from the adjoining property to the East. Amsler further states that his property has been surveyed by a professional land surveyor, and inspected by a professional civil engineer, to ensure that there has been no undermining of adjoining property.
The Town filed this action to enforce the three orders against Amsler.
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and where the moving party is entitled to judgment as amatter of law. Mass.R.Civ.P. 56(c). See Cassesso v. Comm’r. of Correction, 390 Mass. 419, 422 (1983); Cmty. Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); and Allstate Ins. Co. v. Reynolds, 43 Mass.App.Ct. 927, 929 (1997). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
Massachusetts General Laws c. 40A, §7 provides, in relevant part:
The inspector of buildings ... or person or board designated by local ordinance or by-law, shall be charged with the enforcement of the zoning ordinance or by-law and shall withhold a permit for the construction, alteration, or moving of any building or structure if the building or structure as constructed, altered or moved would be in violation of any zoning ordinance or by-law; and no permit or license shall be granted for a new use of a building, structure or land which use would be in violation of any zoning ordinance or by-law.
Applicants aggrieved by an order of the building inspector or his agent under a zoning bylaw have 30 days from the date of said order to appeal to the zoning board of appeals. G.L.c. 40A, §§8, 15.[5] See Balcam v. Hingham, 41 Mass.App.Ct. 260, 266, rev. denied, 423 Mass. 111 (1996). Similarly, the Code, 780 C.M.R. 122.1, permits a party aggrieved to appeal to the State Building Code Appeals Board within 45 days from the time of the issuance of the order.[6] This court does not hear appeals of aggrieved parties who have failed to exhaust their administrative remedies, except in “extraordinary circumstances” as when the administrative remedy is inadequate or where there is no dispute about the facts, and the issue involves merely a question of law. Id., citing Space Bldg. Corp. v. Comm’r. of Rev., 413 Mass. 445, 448 (1992).
“In recent years, [the Supreme Judicial Court] has frequently emphasized the importance of judicial application of exhaustion principles ...” Murphy v. Adm’r. of the Div. of Pers. Admin., 377 Mass. 217, 220 (1979). The general rule, even where an alternative judicial or statutory remedy providing access to the courts exists, is that, if an administrative procedure is available that “may afford the plaintiffs some relief, or may affect the scope or character of judicial relief, exhaustion of the possibilities [of such administrative action] should ordinarily precede independent action in the courts.” Clark & Clark Hotel Corp. v. Bldg. Inspector of Falmouth, 20 Mass.App.Ct 206, 209 (1985), quoting Nelson v. Blue Shield of Mass., Inc., 377 Mass. 746, 752 (1979); see also Balcam, 41 Mass.App.Ct. at 266. If a party fails to appeal an order by a building inspector, he is deemed to have waived his right to seek judicial review pursuant to G.L.c. 40A, §17.[7] Id.
An aggrieved person who fails to appeal action taken by an administrative agency cannot later attempt to challenge the earlier action in an effort “which, regardless of its form, [is] the equivalent of an appeal” from an earlier decision. Bonfatti v. Zoning Bd. of Appeals, 48 Mass.App.Ct. 46, 50 (1990), quoting Klein v. Planning Bd. of Wrentham, 31 Mass.App.Ct. 777, 778, rev. denied, 413 Mass. 1103 (1992). “Raising issues collaterally as a defense to enforcement of a cease and desist order, as opposed to directly appealing such an order, is the equivalent of an appeal.” Ferruzzi v. E.Z. Disposal Serv., Inc. No. CIV.A.99-2045E, 2000 WL 286725, at *5 (Mass.Super. Feb. 17, 2000); Balcam, 41 Mass.App.Ct. at 266. A parly who fails to appeal an order of the building inspector to the Zoning Board of Appeals may not litigate the lawfulness of the activity in question as a defense to an enforcement action. Ferruzzi, supra.
The Town contends that, since Amsler failed to timely appeal any of the building inspector’s three orders to the Board, he is now bound by the orders and cannot contest the Town’s right to their enforcement. Amsler asserts that he was not obligated to appeal the orders because the Town lacks the authority to order him to restore the Property to its pre-excavation condition, and that no violations of the By-laws or the Code have occurred.
*632 Amsler invokes the narrow exception to the doctrine requiring exhaustion of administrative remedies, by claiming that these issues are “questions of law” appropriate for adjudication by the court without prior resort to available administrative remedies. Unfortunately, for Amsler, “the doctrine of exhaustion is alive and well in the zoning area." Clark & Clark Hotel Corp., 20 Mass.App.Ct. at 210.
Amsler relies on Goldlust v. Bd. of Appeals of North Andover, 24 Mass.App.Ct. 1183 (1989), among two other cases, for the proposition that the Superior Court has jurisdiction to decide issues involving interpretation of a zoning by-law.[8] In Goldlust, the plaintiff sought judicial review of a building inspector’s interpretation of a zoning by-law after the board of appeals had partially addressed the pertinent issues in a special permit denial. In Goldlust the applicant had at least made a partial resort to his administrative remedies. Id. at 1184. Amsler here made no effort to preserve his appeal rights, either administrative or judicial. He did not even make the pretense of appealing to the Board. His abandonment of his appeal rights certainly cannot be said to create an “extraordinary circumstance” allowing him to sidestep the requirement that he exhaust his administrative remedies. Amsler may not now raise, as an objection to enforcement of the orders, arguments which he could have raised had he pursued his administrative remedies through the Board or the State Building Code Appeals Board. If he were not required to go through the administrative process, no party would follow the administrative route to challenge an order by the building inspector.
Amsler’s argument that the building inspector has no authority to order him to restore the Property to its pre-excavation condition because neither the By-laws nor the Code expressly authorize such action, and that the only authority possessed by the building inspector is to issue a cease and desist order, is without merit. Massachusetts General Laws c. 40A, §7 authorizes the building inspector to enforce the local by-law; the Code authorizes that very same building inspector to enforce the Code.[9] Enforcement of the prohibitions of a by-law or the Code may require the building inspector to order an individual to do more than simply cease and desist. To hold otherwise would entirely vitiate the force of a zoning by-law and the Code. See Stoughton v. Gill No. CIV.A 2000-01977 (Mass.Super. June 18, 2001) (court upholding building inspector’s order to remove structures constructed in violation of the zoning by-law); Stoughton v. Capozzoli, No. CIV.A. 1999-01255 (Mass.Super. Jan. 4, 2002) (court upholding building inspector’s “cease and desist” order requiring removal of stored machineiy in violation of the zoning by-law).[10]
Therefore, Amsler lost his right to challenge the validity of the orders by not appealing through the administrative route within the requisite time.
ORDER
For the above reasons, it is hereby ORDERED that the Town’s motion for summary judgment be ALLOWED, and Amsler’s motion for summary judgment be DENIED.

A party aggrieved has thirty days from the date of the issuance of the order to appeal to the Zoning Board of Appeals and forty-five days to the State Building Code Appeals Board.

Although irrelevant to this discussion, Amsler asserts that he ceased removing sand from his property upon the advice of his counsel, who concurred with Asmann’s determination that, under the definition of “quany/sandpit” as set forth in the By-laws, the mere removal of sand without first having obtained a building permit, was technically a “quany/sandpit. ”

G.L.c. 404, §8 provides in pertinent part: “An appeal to the permit granting authority as the zoning ordinance or by-law may provide, may be taken by any person aggrieved by reason of his inability to obtain . . . enforcement action from any administrative officer under the provisions of this chapter ... or by any person . . . aggrieved by an order or decision of the inspector of buildings, or other administrative official, in violation of any provision of this chapter or any ordinance or by-law adopted thereunder.”
G.L.c. 40A, §15 provides that an appeal under section 8 “shall be taken within thirty days from the date of the order or decision which is being appealed, by filing a notice of appeal, specifying the grounds thereof, with the city or town clerk ...”

 780 C.M.R. 122.1 provides in relevant part: “[w]hoever is aggrieved by an interpretation, order, requirement, direction or failure to act under 780 C.M.R. by any agency or official of the city, town or region charged with the administration or enforcement of 780 C.M.R... may appeal directly to the State Building Code Appeals Board . .. not later than 45 days after the service of notice thereof of the interpretation, order, requirement or direction.”

Section 17 provides in pertinent part: “Any person aggrieved by a decision of the board of appeals . . . may appeal to the land court department, [or] the superior court department ... The complaint shall allege that the decision exceeds the authority of the board .. . and shall contain a prayer that the decision be annulled.”

Amsler also cited to Castelli v. Bd. of Selectmen of Seekonk, 15 Mass.App.Ct. 711 (1983), and Burlington Sand & Gravel, Inc. v. Harvard, 31 Mass.App.Ct. 261 (1991), neither of which stands for the proposition asserted by Amsler. In Castelli, the building inspector, after issuance of a building permit to the plaintiff, was later ordered by the chairman of the board of selectmen to sign a stop work order, despite the fact that the building inspector did not believe there was a zoning violation sufficient to mandate such a stop order. Id. at 712-13. In affirming the decision of the trial court to vacate the stop work order as being invalid, the court determined that it was an improper use of authority by the board of selectmen to influence the building inspector to issue an order, and held that such action in bad faith constitutes one of the extraordinary circumstances in which exception to the exhaustion of remedies requirement would be appropriate. Amsler cannot rely on Burlington Sand & Gravel either. That case deals with the issue of whether a preliminary injunction precludes fines for violation of the by-law during the injunction; it does not discuss exhaustion of administrative remedies.

 780 C.M.R. 106.1 likewise provides the building inspector and local inspector (“building official”) the authority to “enforce all of the provisions of 780 C.M.R and any other state statutes, rules and regulations, or ordinances or bylaws which empower the building official.”

Amsler’s final argument, concerning the Town’s failure to substitute a proper party, needs only a footnote. Amsler contends that because the nominal plaintiff, Richard Asmann, is no longer the Wellfleet Inspector of Buildings, the case must be dismissed. The fact that the individual serving as the Wellfleet Inspector of Buildings has changed since the institution of this action simply has no effect on the procedural posture of the case. Mass.R-Civ.P. 25(d)(1). The Rule states, in pertinent part:
When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.